# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONNIE OFFER,** | : | CIVIL ACTION NO. 1:19-CV-1078 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **HERSHEY ENTERTAINMENT & RESORTS COMPANY,** | : | |
| Defendant | : | |

## **MEMORANDUM**

Plaintiff Ronnie Offer commenced this action against his former employer, defendant Hershey Entertainment & Resorts Company ("Hershey"), asserting claims of racial discrimination and retaliation under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-2, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. AND CONS. STAT. ANN. §§ 951-963.  (Doc. 13).  Hershey moves to dismiss all counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 14).  For the reasons set forth below, the court will grant in part and deny in part Hershey's motion to dismiss.

## I.     Factual Background & Procedural History

Offer is an African American male who was hired by Hershey around January 6, 2017, to a "Painter/Fiberglass II" position.  (See Doc. 13 ¶¶ 20-21).  Hershey is an entertainment and hospitality company in Hershey, Pennsylvania.  (Id. ¶ 3).  Offer claims that when he was hired, he was a skilled and well-qualified painter with roughly 45 years' experience.  (Id. ¶¶ 22-23).  He also believes that he was the first African American to ever be hired by his department.  (Id. ¶ 25).

Offer alleges that Hershey discriminated against him because of his race and retaliated against him for lodging complaints regarding that discrimination. He claims that certain coworkers made racial comments to him, like calling him "colored" or the "Green Mile." (Id. ¶¶ 26-28). Offer also alleges that a coworker bullied him and threatened to terminate his employment, despite lacking the authority to do so. (Id. ¶ 29). These threats were made only to African American employees. (Id.) Offer complained to his manager, Michael Smeltz, about these incidents, but maintains that Smeltz refused to address his complaint. (Id. ¶¶ 30-31). As further examples of discriminatory treatment, Offer alleges that the lead foreman withheld necessary materials, like paint, that were provided to Offer's non-African American coworkers, (id. ¶¶ 32-33), and that his coworkers told him that he received incorrect training compared to that given to non-African American employees, (id. ¶ 34).

Hershey fired Offer around June 2, 2017, citing purported performance deficiencies. (Id. ¶ 35). Offer was not notified of any deficiencies before he was fired, and he claims his performance was comparable to that of other employees who were not fired. (Id. ¶¶ 36-37). Offer asserts that he was fired not because of his performance, but because of his race. (Id. ¶ 38). At the time of his firing, Offer had been employed by Hershey for roughly five months. (See id. ¶¶ 21, 35).

Following his termination, Offer filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging Title VII violations against Hershey. (Id. ¶ 13; Doc. 15-2). Offer dual-filed his complaint with the Pennsylvania Human Relations Commission. (Doc. 13 ¶ 14). In response to Offer's

charge, Hershey submitted a position statement to the EEOC denying any discriminatory or retaliatory conduct on its part. (See Doc. 18-1). The EEOC investigated Offer's charge before dismissing his claim and issuing a right-to-sue letter. (See Doc. 15-3).[1]

Offer commenced this action via complaint on June 24, 2019. During a September 26, 2019 teleconference, defense counsel advised the court that it intended to file a motion to dismiss the complaint and plaintiff's counsel offered to amend the complaint to avoid motion practice. (Doc. 18 at 2-3). Offer's amended complaint asserts claims of racial discrimination and retaliation. Hershey moves to dismiss Offer's amended complaint pursuant to Federal Rule of Civil Procedure

---

[1] Hershey filed Offer's EEOC charge with its brief in support of the motion to dismiss. (See Doc. 15-2). Courts are usually limited to considering the complaint's allegations, "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We can, however, consider "document[s] integral to or explicitly relied upon in the complaint." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). The EEOC charge is integral to Offer's complaint and is explicitly referenced therein. Its authenticity is also not in dispute. We will therefore consider it. And although Hershey's position statement was not attached to or identified in Offer's complaint, we can consider "the EEOC charge and related EEOC documents . . . either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record." Griggs v. SEPTA, No. 14-6226, 2015 WL 4476772, at *2 (E.D. Pa. July 22, 2015) (quoting Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), aff'd, 276 F.3d 579 (3d Cir. 2001)) (collecting cases); see also Amaya v. Ballyshear LLC, 295 F. Supp. 3d 204, 217 (E.D.N.Y. 2018) (collecting cases); Israel v. Insight Pipe Contracting, LP, No. 12-1247, 2013 WL 2318852, at *3 (W.D. Pa. May 28, 2013) (same); Smith v. Westchester County, 769 F. Supp. 2d 448, 461 n.12 (S.D.N.Y. 2011) (same).

12(b)(6) for failure to state a claim and failure to exhaust administrative remedies. The motion is fully briefed and ripe for disposition.

## II. **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting

4

Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

### III. Discussion

Hershey makes two principal arguments in support of its motion to dismiss: *first*, that Offer failed to exhaust administrative remedies as to his retaliation claim; and *second*, that Offer fails to state a claim for racial discrimination or retaliation. We address these arguments *seriatim*.

#### A. Failure to Exhaust Administrative Remedies

Under Title VII and the PHRA, plaintiffs must administratively exhaust their claims in an EEOC charge before initiating a civil lawsuit.  Mandel v. M & Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013).  A plaintiff generally must exhaust administrative remedies with respect to all claims, but a court may assume jurisdiction over claims not explicitly exhausted or referenced in an EEOC charge if they are reasonably within the charge's scope.  See id.  Failure to check the appropriate box on an EEOC charge is material to an exhaustion analysis, see Vought v. Twin Tier Hosp., L.L.C., No. 1:18-CV-1113, 2019 WL 2501470, at *3 (M.D.

5

Pa. June 19, 2019) (Conner, C.J.) (citing Mandel, 706 F.3d at 163-64), but is not alone dispositive, see id. (citing Barzanty v. Verizon PA, Inc., 361 F. App'x 411, 414 (3d Cir. 2010) (nonprecedential)). The relevant test is whether the allegedly unlawful conduct was fairly encompassed within the scope of the EEOC charge and its related investigation. See Mandel, 706 F.3d at 163 (quoting Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996)). In determining whether a claim is contemplated in an EEOC charge, courts liberally interpret the administrative filing. See Anjelino v. N.Y. Times Co., 200 F.3d 73, 94 (3d Cir. 1999) (citing Hicks v. ABT Assocs. Inc., 572 F.2d 960, 965 (3d Cir. 1978)).

Hershey contends that Offer has not exhausted his administrative remedies for his retaliation claim because it was not expressly contained in the EEOC charge. There is no dispute that Offer did not check the box for retaliation, but that fact is not alone dispositive. In the charge, Offer claimed that his coworkers discriminated against him, that he reported this treatment to his supervisor, and that he was subsequently terminated for "alleged" performance issues. (Doc. 15-2 at 1). Construing Offer's charge liberally, we can reasonably infer that Offer questioned the propriety of his firing. That is, he questioned whether his firing was because of his performance or his internal complaint. Importantly, Hershey itself construed the charge this broadly—its position statement before the EEOC responded to allegations of discrimination *and* retaliation. (See Doc. 18-1). Hershey's position statement indicates the breadth of the charge and confirms that both discrimination and retaliation claims were reasonably within the scope of the administrative filing. Accordingly, we conclude that Offer properly exhausted his retaliation claim.

6

### B.     Failure to State a Discrimination Claim

Hershey next challenges the sufficiency of Offer's discrimination and retaliation claims. Title VII outlaws discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It also bars retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). PHRA claims are reviewed under the same standards as Title VII claims. See Connelly v. Lane Constr. Corp., 809 F.3d 780, 791 n.8 (3d Cir. 2016) (citing Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000)).

Claims for discrimination or retaliation will survive a motion to dismiss if the plaintiff pleads factual allegations that "raise a reasonable expectation that discovery will reveal evidence" of the *prima facie* elements. Id. at 789 (citations omitted). In other words, plaintiffs asserting discrimination or retaliation claims need not establish a *prima facie* case at the pleading stage—"[a] *prima facie* case is 'an evidentiary standard, not a pleading requirement.'" Id. (quoting Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510 (2002)).

#### 1.     *Racial Discrimination Claim*

Offer claims that he has indirect evidence that Hershey subjected him to disparate treatment based on his race. Offer must plead facts creating a reasonable expectation that discovery will reveal that (1) he is a member of a protected class,

7

(2) he was qualified for the relevant position, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination.  See Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 n.5 (3d Cir.1996) (*en banc*)); see also Connelly, 809 F.3d at 788 & n.5.  Discrimination may be inferred by showing that an employer treated similarly situated employees outside of the protected class more favorably than the plaintiff.  See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999) (citation omitted); Mandel, 706 F.3d at 170.  Hershey challenges only the fourth prong.

The amended complaint satisfies Offer's pleading burden as to his disparate treatment claim.  Offer alleges that he was the sole African American employed by his department; he was a skilled painter with roughly 45 years' experience; he was informed that he was the first African American to ever be hired by the department; he was subjected to discriminatory, racial comments from his coworkers; the lead foreman refused to supply him with materials necessary to complete his job duties, despite supplying non-African American coworkers with the needed supplies; and he was told that he had not been trained correctly in comparison with his non-African American coworkers.  Taken together, Offer's amended complaint suggests that he—unlike colleagues who were not in his protected class—was mistreated and eventually fired because of his race.  Under the circumstances, we can infer from Offer's allegations that discovery may support his claims.  We will deny Hershey's motion to dismiss the discrimination counts.

### 2. *Retaliation Claim*

Offer also claims Hershey retaliated against him.  Offer must plead facts that raise a reasonable expectation that discovery will reveal evidence that (1) he was engaged in a protected activity, (2) his employer took adverse action against him, and (3) there is a causal link between the activity and the adverse action.  Connelly, 809 F.3d at 789 (citing Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 201 (3d Cir. 1994)).  Hershey argues that Offer has not alleged a protected activity or causation.

#### i. **Protected Activity**

Title VII protects both formal "opposition" activity, like the filing of charges of discrimination, and informal "opposition" activity, like internal complaints to management.  See Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015) (citations omitted).  To support a retaliation claim, opposition activity must be based on a "good faith" and "objectively reasonable belief" that the conduct opposed violates Title VII.  Id. at 193-94 (citations omitted).  The Third Circuit has indicated that repeated inherently derogatory terms directed at the plaintiff may support an objectively reasonable belief of a Title VII violation.  Id. at 194 (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (*per curiam*); Kargbo v. Phila. Corp. for Aging, 16 F. Supp. 3d 512, 532 (E.D. Pa. 2014)).  The Supreme Court has explained, however, that "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" will not support a retaliation claim.  Breeden, 532 U.S. at 270.

Offer's complaint was based on an objectively reasonable belief that the conduct he complained of constitutes a Title VII violation.  His complaint to

9

management was lodged in response to racially discriminatory comments—including being called "colored" and the "Green Mile"—made by coworkers "[d]uring his employment." (Doc. 13 ¶¶ 26-28). Both labels are extremely offensive, loaded with historical animus, and inherently derogatory. Further, they were directed at Offer as the only African American employee in the department. Construing the complaint in Offer's favor, it is also plausible that this treatment was not isolated but was instead part of a broader or more sustained pattern of discriminatory treatment. See Moore v. City of Philadelphia, 461 F.3d 331, 345 (3d Cir. 2006) (allowing retaliation claim to proceed where discriminatory conduct was "far more substantial" than that at issue in Breeden); cf. Pollard v. George S. Coyne Chem. Co., No. 07-3744, 2008 WL 2120710, at *7 (E.D. Pa. May 19, 2008) (citing Jordan v. Alternative Res. Corp., 458 F.3d 332, 336, 341 (4th Cir. 2006), overruled by Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264 (4th Cir. 2015)) (no objectively reasonable belief that single incident of harassment constitutes a Title VII violation, so no protected activity). Offer has pled a protected activity.

### ii. Causation

To establish causation at the pleading stage, the complaint must make allegations that raise a reasonable expectation that discovery will reveal facts "sufficient to raise the inference that [the plaintiff's] protected activity was the *likely reason* for the adverse [employment] action." Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 259 (3d Cir. 2017) (quoting Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)) (second alteration in original). A plaintiff can establish causation in a variety of ways, including temporal proximity that is "unusually

suggestive of retaliatory motive." Id. at 260 (quoting Shaner v. Synthes, 204 F.3d 494, 505 (3d Cir. 2000)). Although there are no set time limits, temporal proximity of two days has been found to be unusually suggestive of a retaliatory motive, while a 10-day period requires additional evidence of causation. See Blakney v. City of Philadelphia, 559 F. App'x 183, 186 (3d Cir. 2014) (nonprecedential) (citing Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)). When temporal proximity alone does not imply causation, courts apply the "timing plus other evidence" standard to determine whether the circumstances are indicative of retaliation. Id. (quoting Farrell, 206 F.3d at 280).

Offer fails to link his complaint to his firing. He does not explain when he complained to his manager or how much time passed before his later firing. It is conceivable that, given Offer's short five-month tenure at Hershey, the two events were close in time. But that is pure speculation and we have no alleged factual basis to believe that to be the case. Indeed, Offer has not provided dates of any relevant events other than those of his hiring and firing.

Absent unusually suggestive timing, a plaintiff can still overcome the causation hurdle by alleging that the employer demonstrated "antagonism or retaliatory animus," by poking holes in the employer's stated reasons for firing him, or by identifying any other facts "sufficient to support the inference of retaliatory animus." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232-33 (3d Cir. 2007) (citing Farrell, 206 F.3d at 279-81). Offer, however, has not pled any other facts suggestive of a retaliatory motive. His allegation that his manager "refused to

11

address" his complaint is not enough by itself to suggest racial animus.  (See Doc. 13 ¶ 31).  Nor are his allegations of mistreatment by the lead foreman, which do not appear to be connected to Offer's complaint or subsequent firing.  Offer's conclusory suggestion that he was fired because of his race, and not his "substandard performance," fails to provide enough detail to infer retaliatory animus, as opposed to discriminatory animus.  (See id. ¶¶ 35-38).  For these reasons, we will dismiss Offer's retaliation claim.

Offer asks the court for an opportunity to amend his pleading.  (See Doc. 18 at 19).  Courts must generally grant leave to amend before dismissing a civil rights claim if a curative amendment is conceivable.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The deficiencies identified above are factual rather than legal in nature.  Curable amendment is conceivable, so we will grant Offer leave to amend his complaint.  See id.

## IV.   Conclusion

The court will grant in part and deny in part Hershey's motion (Doc. 14) to dismiss the amended complaint.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    June 18, 2020